# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### CASE NO.: 8:25-cv-03398

**JOEL P. PRICE d/b/a JOEL PATRICK,**
**an individual,**

     **Plaintiff,**

v.

**THE INDIVIDUALS, PARTNERSHIPS,**
**AND UNINCORPORATED**
**ASSOCIATIONS IDENTIFIED ON**
**SCHEDULE A.**

     **Defendants.**

_____/

## PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER RESTRAINING TRANSFER OF ASSETS

Plaintiff, JOEL P. PRICE d/b/a JOEL PATRICK (herein "Plaintiff"), by and through the undersigned counsel and pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, the All Writs Act 28 U.S.C. § 1651(a), and M.D. Fla. R. 6.01, respectfully moves on an *ex parte* basis for entry of a temporary restraining order and an order restraining transfer of assets against Defendants, the Individuals, Partnerships, and Unincorporated Associations Identified on Schedule A to the Complaint (herein, collectively, "Defendants"). In support thereof, Plaintiff incorporates the following Memorandum of Law:

## INCORPORATED MEMORANDUM OF LAW

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff brings this action against the Defendants identified in Schedule A of the Complaint, filed under seal, for trademark infringement and trademark counterfeiting under 15 U.S.C. § 1114(1), false designation of origin or false description under 15 U.S.C. § 1125(a), common law unfair competition, and common law trademark infringement.

As alleged in the Complaint, Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiff's trademark by operating e-commerce stores established via third-party marketplace websites, including AliExpress, Ebay.com, Etsy.com, Amazon.com, TikTok.com, and other platforms, under their seller identification names identified on Schedule A to the Complaint (herein the "Seller IDs"). The Defendants' create their Internet stores with the intent to have them appear to be selling licensed and official "White Privilege Card" products, while in reality they are selling infringing products in violation of Plaintiff's trademark rights to unknowing consumers. Specifically, Plaintiff has obtained evidence clearly demonstrating the following: (1) Defendants are engaged in the advertising, offering for sale, and sale of counterfeit and infringing products bearing Plaintiff's trademark; and (2) Defendants accomplish their sales of

infringing goods via the Internet through the use of, at least, e-commerce stores operated via the Internet marketplace websites, including AliExpress, Ebay.com, Etsy.com, Amazon.com, TikTok.com, and other platforms. Screenshots of the infringing products obtained from the various Defendant Internet Stores are shown in sealed Exhibit B of the Complaint. Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their infringing operations. In short, Defendants run illicit stores that sell infringing products with disregard for anything except generating profits.

This Court has personal jurisdiction over Defendants because Defendants target Florida residents, including those in this District, and have offered to sell, and, on information and belief, have sold and continue to sell infringing products to consumers within the United States and in the State of Florida. Specifically, Defendants are reaching out to do business with Florida residents by operating one or more commercial, interactive Internet Stores through which Florida residents can purchase infringing and counterfeit products improperly featuring Plaintiff's "White Privilege Card" trademark.

Defendants' unlawful activities have: (1) deprived, and continue to deprive, Plaintiff of his right to exclusively use its trademark in connection with the goods listed on his registration and to determine the manner in which his trademark is presented to the public, (2) misled, confused, and disappointed consumers as to the

source of the counterfeited products, and (3) eroded, and continue to erode, the goodwill associated with Plaintiff's respective trademark and brand. Defendants have wrongfully traded off and capitalized on Plaintiff's reputation and the goodwill associated with his trademark and will likely continue to do so. Through these infringing activities, Defendants are defrauding Plaintiff and the consuming public for their own benefit. Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiff ongoing irreparable harm. Accordingly, Plaintiff is seeking entry of a temporary restraining order prohibiting Defendants from further infringement of Plaintiff's trademark. Moreover, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained.

In light of the inherently deceptive nature of Defendants' infringing and counterfeiting businesses, Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue an *ex parte* Temporary Restraining Order ("TRO"). Plaintiff seeks an order to (1) temporarily restrain Defendants' continued manufacture, importation, distribution, offering for sale, and sale of the infringing or counterfeit goods; (2) temporarily restrain Defendants' assets to preserve Plaintiff's right to an equitable accounting, including, but not limited to, funds transmitted through all possible online marketplace payment providers, including but not limited to Alipay, Wish.com, Worldpay, PayPal, the

DHgate.com and Joom.com platforms; (3) authorize expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the manufacture, distribution, offering for sale, and sale of the infringing or counterfeit products along with Defendants' financial records; and (4) authorize service by electronic mail or electronic publication, due to the fact that Defendants are, on information and belief, located in countries outside the U.S., including China, and Plaintiff has been unable to locate them despite diligent efforts.

Federal circuit courts regularly issue orders awarding such relief. *See, for example, Oakley, Inc. v. Sunglass Hut International*, 316 F.3d 1331, 1338 (Fed. Cir. 2003) (in relation to a similar patent matter ". . .Oakley sued Sunglass Hut on November 6, 2001, for, inter alia, infringement of the '902 patent , and sought a temporary restraining order. . ."). Plaintiff can demonstrate a strong likelihood of success on the merits, irreparable harm if the injunction is not granted, the balance of hardships falls in favor of Plaintiff, and it is in the public interest to grant this temporary injunction. *See id.* ("A decision to grant or deny a preliminary injunction is within the sound discretion of the district court, based upon its assessment of four factors: (1) the likelihood of the patentee's success on the merits, (2) irreparable harm if the injunction is not granted, (3) the balance of hardships between the parties, and (4) the public interest.").

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Federally Registered Trademark

Plaintiff is the owner of the following trademark registration, which is registered in the United States of America (herein the "Mark"):

| Trademark | Dates of First Use | Registration Number | Registration Date | Class/Good |
|---|---|---|---|---|
| WHITE PRIVILEGE CARD | December 19, 2018 | 7,055,199 | May 16, 2023 | IC 020: Plastic printed novelty identification cards for entertainment purposes, not encoded and not magnetic |

The trademark remains valid and enforceable. *See* attached Declaration of Joel Patrick in Support of Plaintiff's Motion for TRO (herein "Patrick Decl.") at ¶¶ 2 - 3; *see also* a true and correct copy of Plaintiff's federal trademark for the Mark and accompanying Assignment *Nunc Pro Tunc* of all rights attached as Exhibit A to the Complaint.

The Mark is a symbol of Plaintiff's quality, reputation, and goodwill. *See* Patrick Decl. at ¶¶ 4 - 5. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting his Mark and the associated goods since at least December of 2018. *See id.* at ¶ 3; *see* Exhibit A to the

Complaint. Plaintiff has extensively used, advertised, and promoted the Mark across several different social media platforms, including YouTube, Instagram, X, and TikTok, since at least 2020. *See* Patrick Decl. at ¶ 5. Plaintiff's marketing has led to unprecedented growth and awareness of Plaintiff's brand and his Mark amongst consumers. *Id.* at ¶¶ 4 - 5. As of November 7, 2025, Plaintiff has accrued over 3.1 million followers on TikTok, 1.4 million followers on Instagram, and 71.1 thousand followers on X—all of which promote Plaintiff's products bearing the Mark. *Id.* at ¶ 5.

Plaintiff suffers irreparable harm to the goodwill associated with Plaintiff's Mark and brand—as well as a direct monetary loss—every time a third party, including Defendants, sell infringing products bearing the Mark. *Id.* at ¶ 6.

## B.    Defendants Infringing Use of Plaintiff's Mark

Plaintiff has never given Defendants the right, authority, or otherwise permission to use the Mark for any purpose. *See* Patrick Decl. at ¶ 10. Despite knowing this lack of authority, Defendants promote and otherwise advertise, distribute, sell, and/or offer for sale, through the respective e-commerce stores, products bearing Plaintiff's Mark without authorization (herein the "Infringing Products"). *Id.*; *see also* Exhibit B to the Complaint filed under seal. Due to Defendants' infringing use of the Mark, consumers are likely to be misled, confused, and disappointed as to the source of the Infringing Products.

Given Defendants' blatant copying of the Mark, Defendants' Infringing Products and Plaintiff's products are indistinguishable to consumers. Defendants have created a false association in consumers' minds between the Infringing Products and Plaintiff, which directly violates 15 U.S.C. § 1125(a). Plaintiff is suffering irreparable harm and damage by the Defendants using Plaintiff's Mark and the goodwill and reputation associated with such to drive consumers to their e-commerce stores and creates a false association between the Infringing Products and Plaintiff. *Id.* at ¶¶ 6, 12 - 13. Plaintiff is also suffering harm and damage by the incalculable profit Defendants are deriving by using Plaintiff's Mark in commerce to drive consumers to the e-commerce stores and commercial websites. *Id.* at ¶ 14.

As part of his ongoing investigation regarding the sale of the Infringing Products, Plaintiff accessed Defendants' Internet based e-commerce stores. *Id.* at ¶¶ 7 - 9. Upon reviewing the webpages and images of the products bearing the Mark, Plaintiff determined that the Infringing Products were indeed infringing upon the Mark without his authorization. *Id.*

Upon information and belief, Defendants, through their e-commerce stores, have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiff has determined to be counterfeits or infringements of the Mark within this District and throughout the United States. Upon information and belief, Defendants are making substantial sums of money by preying upon consumers, many of whom

have no knowledge that Defendants are defrauding them. Defendants' activities through their e-commerce stores infringe on Plaintiff's Mark. These Internet based stores and associated payment accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Plaintiff.

Moreover, upon information and belief, part or all of the Defendants maintain off-shore bank accounts and regularly move funds from accounts to off-shore bank accounts outside the jurisdiction of this Court. The off-shore bank accounts in combination with the ephemeral nature of Defendants' e-commerce stores make it possible for Defendants to conceal both their identities and their illegal activities. As a result, it is virtually impossible for Plaintiff to discover the full scope of any counterfeiting operations and the true identities of Defendants.

## III.    ARGUMENT

### A.  An *Ex Parte* Temporary Restraining Order Is Necessary To Prevent Immediate Injury

Under Federal Rule of Civil Procedure 65(b), a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where it clearly appears from the specific facts shown by affidavit "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). This is warranted in this particular case.

Defendants fraudulently promote, advertise, sell, and offer for sale products bearing and using counterfeits and infringements of Plaintiff's Mark through their e-commerce stores as identified in the Schedule A attached to the Complaint filed under seal. Specifically, Defendants are wrongfully using counterfeits and infringement of the Mark to increase consumer traffic to their illegal operations. Through their infringing conduct, Defendants are creating a false association between Plaintiff and Defendants in the minds of consumers. The entry of a temporary restraining order would serve to immediately stop Defendants from benefitting from the wrongful use of the Mark and preserve the status quo until a hearing can be held. *See Ain Jeem, Inc. v. Individuals, P'ships, & Unincorporated Ass'n Identified on Schedule "A"*, No. 8:21-cv-01261-VMC-JSS, 2021 U.S. Dist. LEXIS 227249, at *5–7 (M.D. Fla. June 1, 2021) (finding that consumers and the plaintiff would suffer immediate and irreparable harm prior to a hearing unless *ex parte* relief was granted due to the defendants' ability to easily and quickly change e-commerce store account data and payment accounts); *I3 Microsystems, Inc. v. Bautista*, No. 8:19-cv-02917-T-60AAS, 2019 U.S. Dist. LEXIS 229649, at *5 (M.D. Fla. Nov. 26, 2019) ("Where the subject of a TRO is 'in electronic format,' *ex parte* relief is more appropriate because electronically stored data and information can be more easily transferred or destroyed.") (internal citation omitted); *Dell v. BelgiumDomains, LLC*, No. 07-22674, 2007 U.S. Dist. LEXIS 98676, at *19 (S.D.

Fla. Nov. 21, 2007) (granting *ex parte* temporary restraining order due to the defendants' likely "quick, easy, untraceable movement and destruction" of evidence pertaining to their counterfeiting scheme).

Absent a temporary restraining order without notice, Defendants can and will significantly alter the status quo by transferring assets before the Court can determine the parties' respective rights. Specifically, upon information and belief, the e-commerce stores at issue are under Defendants' control, giving Defendants the ability to change ownership or modify e-commerce store data and content, change payment accounts, and transfer ownership rights to Defendants' individual e-commerce stores. *See* Patrick Decl. at ¶ 8. Such modifications can happen easily and quickly after Defendants are provided notice of this action, thereby thwarting this Court's ability to grant meaningful relief. *Id.* Given Defendants' illegal trademark counterfeiting and infringing activities, Plaintiff has no reason to believe Defendants will make their assets available for recovery or otherwise adhere to this Court's authority any more than they have adhered to federal trademark law.

Accordingly, this Court should prevent injustice from occurring by issuing an *ex parte* temporary restraining order precluding Defendants from continuing to display the Infringing Products via the e-commerce stores or modifying and/or deleting any related content or data. Only such an order will prevent Plaintiff's ongoing irreparable harm and maintain the status quo.

**B.    Temporary Restraining Order Standard**

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of relief would serve the public interest." *See Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Plaintiff's evidence establishes all the foregoing and relevant factors.

**C.    Likelihood of Success on the Merits**

**i.    Counts I and II – Counterfeit and Trademark Infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114)**

Section 32 of the Lanham Act provides liability for trademark infringement if a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with [without the owner's consent] which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To succeed on a claim of trademark infringement, a plaintiff must demonstrate that its mark has priority over the infringing marks and that the infringing marks are likely to cause confusion. *See Fla.*

12

*Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016). Plaintiff's evidence satisfies the requirements of 15 U.S.C. § 1114.

Plaintiff's ownership and exclusive use of the Mark is presumed through its registration on the Principal Register of the United States Patent and Trademark Office. *See* Exhibit A to the Complaint; *see also* 15 U.S.C. § 1115(a). Plaintiff has been using the Mark since at least 2018, which is well before the Defendants' promotion and sale of the Infringing Products. *See* Patrick Decl. at ¶ 4; *see also* Exhibit A to the Complaint. Further, Defendants have never had the right or authority to use Plaintiff's Mark. *See* Patrick Decl. at ¶ 10.

As to likelihood of confusion, the Eleventh Circuit considers the following seven factors: (1) the strength of plaintiff's mark; (2) the similarity between plaintiff's mark and the infringing mark; (3) the similarity between the products or services; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) defendant's intent; and (7) actual confusion. *Commodores Entm't Corp. v. McClary*, 648 Fed. Appx. 771, 776 (11th Cir. 2016) (citing *Alliance Metals, Inc. of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000)). All seven factors must be considered, and the appropriate weight given to each factor is determined by the totality of the circumstances. *See Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 127 (11th Cir. 2022).

### a. *Strength of the Mark*

The first factor—the strength of plaintiff's mark—is the second most important factor in the Eleventh Circuit's likelihood of confusion balancing test. *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1256. The strength of a mark is divided into the following four categories: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary. *Id.* Arbitrary marks "bear no relationship to the product," and are the strongest classification. *Id.* at 1257–58. Here, given that 'CARD' is disclaimed, Plaintiff's Mark is arbitrary, or at least suggestive, because 'WHITE PRIVILEGE' bears no relationship to plastic printed novelty identification cards. *See* Exhibit A to the Complaint. Moreover, the Mark has acquired secondary meaning due to Plaintiff's substantial time, labor, and expense in developing, advertising, and promoting the Mark. *See* Patrick Decl. at ¶¶ 4 - 5 As a result, products bearing the Mark are widely recognized and exclusively associated by consumers as being high quality products sourced from Plaintiff and have acquired secondary meaning. Therefore, the first factor weighs in Plaintiff's favor.

### b. *Similarity of the Marks*

"The likelihood of confusion is greater when an infringer uses the exact trademark." *Turner Greenberg Assocs. v. C & C Imps., Inc.*, 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004); *see Glen Raven Mills, Inc. v. Ramada Int'l, Inc.*, 852 F. Supp. 1544, 1553–54 (M.D. Fla. 1994) (finding the word marks 'SUNBRELLA' and

'SUNBRELLA' to be similar due to identical spelling, pronunciation, and appearance). Here, Defendants are using marks that are identical, or nearly identical to, Plaintiff's Mark because WHITE PRIVILEGE CARD (Plaintiff's Mark) is identical in spelling, pronunciation, and appearance to the marks appearing on the Infringing Products, WHITE PRIVILEGE CARD. *See Glen Raven Mills, Inc.*, 852 F. Supp. at 1553–54; *see also* Exhibit A to the Complaint; Exhibit B, filed under seal, to the Complaint. Thus, the second factor weighs in favor of finding a likelihood of confusion.

### c. *Similarity of the Goods*

"The greater the similarity between the products and services, the greater the likelihood of confusion." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983) (internal citation omitted). Here, Defendants are selling the same and similar types of goods that Plaintiff sells—namely, plastic printed cards and credit card covers. *See* Patrick Decl. at ¶¶ 7 - 9; *see also* Exhibit A to the Complaint; Exhibit B, filed under seal, to the Complaint. Defendants' Infringing Products appear virtually identical to Plaintiff's genuine products due to the Infringing Products bearing counterfeits of Plaintiff's Mark. *See* Patrick Decl. at ¶¶ 8 - 10; *see also* Exhibit A to the Complaint; Exhibit B, filed under seal, to the Complaint. Therefore, the third factor weighs in favor of a finding of likelihood of confusion.

15

### d. *Similarity of the Sales Methods and Advertising Methods*

When comparing the sales methods, the outlets do not need to be identical or directly be in competition but must show some level of overlap to support the finding of likelihood of confusion. *See Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1261. Further, "[t]he greater the similarity in advertising campaigns the greater the likelihood of confusion." *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1508 (11th Cir. 1985). Here, both Plaintiff and Defendants sell and advertise via the Internet in the same geographical distribution areas within the United States, including Florida and within this District, through Internet-based e-commerce platforms. Therefore, the sale and advertising methods are identical. *See Mont. Prof'l Sports, LLC v. Leisure Sports Mgmt.*, 422 F. Supp. 2d 1271, 1280 (M.D. Fla. 2006) (finding both parties' sale and advertising methods on the Internet, among other avenues, to be identical under the two factors). Moreover, Plaintiff and Defendants both target the same general consumer population in the U.S., and thus, Plaintiff is directly competing with Defendants' Infringing Products. *See* Patrick Decl. at ¶¶ 7 - 10. Accordingly, both the fourth and fifth factors weigh in Plaintiff's favor.

### e. *Defendants' Intent*

When an alleged infringer adopted a mark with the intent of deriving benefit from the plaintiff's reputation, "that fact alone 'may be sufficient to justify the inference that there is confusing similarity.'" *John H. Harland Co.*, 711 F.2d at 977

(internal citation omitted). "Intentional copying of another's trademark is *prima facie* evidence both that the mark has secondary meaning, and that the imitation is likely to confuse consumers." *Playboy Enters. v. P.K. Sorren Exp. Co.*, 546 F. Supp. 987, 996 (S.D. Fla. 1982). Here, given that the Infringing Products bear identical or substantially similar marks as Plaintiff's Mark, Defendants undoubtedly intended to trade off Plaintiff's reputation and goodwill in a manner that is likely to generate consumer confusion. *See John H. Harland Co.*, 711 F.2d at 977 (finding the fact that the defendant attempted to copy the plaintiff's product "as closely as possible" important in determining the defendant's intent). Thus, the sixth factor weighs in favor of the finding of likelihood of confusion.

### f. *Evidence of Actual Confusion*

Although actual confusion is the best evidence, it is not a prerequisite to find a likelihood of confusion. *See Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.2d 1330, 1340 (11th Cir. 1999); *see also Mont. Prof'l Sports, LLC*, 422 F. Supp. 2d at 1281 ("… [E]vidence of actual confusion is not required to demonstrate a likelihood of confusion in the Eleventh Circuit."). Here, Defendants' Infringing Products bear identical or substantially similar marks to Plaintiff's Mark and look identical or substantially similar to Plaintiff's products bearing the Mark. *See* Patrick Decl. at ¶¶ 7 - 10; *see also* Exhibit A to the Complaint; Exhibit B, filed under seal, to the Complaint. Thus, it is reasonable to infer that actual confusion exists in the

17

marketplace based on the circumstantial evidence available. *See Bauer Lamp Co. v. Shaffer*, 941 F.2d 1165, 1172 (11th Cir. 1991) ("Intent to copy in itself creates a rebuttable presumption of likelihood of confusion."); *see also AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1544 (11th Cir. 1986) ("It would be exceedingly difficult to detect instances of actual confusion when, as here, the goods are relatively inexpensive and their actual properties are exactly identical.") (internal citation omitted). Therefore, the seventh factor likely weighs in favor of a finding the likelihood of confusion.

In light of all seven factors weighing in Plaintiff's favor, Plaintiff's counterfeit and trademark infringement claim is likely to succeed on the merits.

> ## ii.    Count III – False Designation of Origin or False Description under Section 43 of the Lanham Act (15 U.S.C. § 1125(a))

Alike trademark infringement, the test for false designation of origin under Section 43(a) of the Lanham Act is establishing a likelihood of confusion. 15 U.S.C. § 1125(a); *Ross Bicycles, Inc.*, 765 F.2d at 1503–04 ("The factors relevant to establishing [a false designation of origin claim] are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15 U.S.C. § 1114."). Therefore, because Plaintiff has established the merits of its trademark counterfeiting and infringement claims against Defendants, a likelihood of success on the merits is also shown for Plaintiff's false designation of origin or false description claim.

18

### iii.    Count IV and V – Common Law Unfair Competition and Common Law Trademark Infringement

Florida common law trademark infringement and unfair competition claims "rise or fall with [their] federal trademark infringement and unfair competition claims." *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1267; *see Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) ("Suntree contends that the district court erroneously concluded that the legal analysis is the same for all three counts in Suntree's complaint: violations of the Lanham Act, FDUPTA, and Florida state common law for infringement and unfair competition. We disagree."). As discussed above in detail, Plaintiff has satisfied the elements of its federal trademark counterfeiting and infringement claim and unfair competition claim. Specifically, Plaintiff has established that a likelihood of confusion exists. Therefore, Plaintiff is also likely to succeed on the merits of its common law unfair competition and common law trademark infringement claims.

### D.    Plaintiff is Suffering Irreparable Injury

In the Eleventh Circuit, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." *Ferrellgas Ptners., L.P. v. Barrow*, 143 Fed. Appx. 180, 191 (11th Cir. 2005) (internal citation omitted). Further, "grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." *Id.* at 190 (internal citation omitted). As discussed above, a likelihood of

19

confusion exists herein because Defendants have engaged in counterfeiting and infringing activities by promoting, advertising, distributing, selling an/or offering for sale the Infringing Products that bear marks that are virtually identical and indistinguishable to Plaintiff's Mark. Moreover, Plaintiff has suffered loss of control of his reputation, loss of trade, and loss of goodwill associated with his Mark. *See* Patrick Decl. at ¶¶ 6, 11 - 14. Therefore, Plaintiff has suffered and continues to suffer irreparable injury without this Court's immediate intervention.

### E.    The Balance of Hardship Tips Sharply in Plaintiff's Favor

Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Mark in the United States. *See* Patrick Decl. at ¶ 4. Should Defendants be permitted to continue their trade in counterfeit goods, Plaintiff will suffer losses and damage to his reputation and the goodwill associated with the Mark. *Id.* at ¶¶ 12 - 14. Defendants will suffer no legitimate hardship in the event a temporary restraining order is issued because Defendants have no rights to engage in their present counterfeiting and infringement activities. Therefore, the balance of hardship tips sharply in Plaintiff's favor.

### F.    The Relief Sought Serves the Public Interest

The public has the right to "not be led astray by the use of inevitably confusing marks." *See Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008); *see also Ferrellgas Ptners., L.P.*, 143 Fed. Appx. at 191 ("… the

public interest will be served by the injunction by avoiding confusion in the marketplace."). Here, Defendants' illegal and fraudulent actions are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin, source, or sponsorship of the Infringing Products. Therefore, the relief sought herein serves the public interest by avoiding confusion in the marketplace.

### G.    The Equitable Relief Sought is Appropriate

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …" 15 U.S.C. § 1116(a).

### i.    Entry of an order immediately enjoining Defendant's unauthorized and fraudulent use of Plaintiff's Mark is appropriate

Plaintiff requests an order requiring Defendants immediately cease all use of Plaintiff's Mark, or substantially similar marks, including on or in connection with AliExpress, Ebay.com, Etsy.com, Amazon.com, TikTok.com, and other websites owned and operated, or controlled by Defendants. Such relief is necessary to stop the ongoing harm to Plaintiff's Mark and goodwill and to prevent Defendants from continuing to benefit from the increased consumer traffic to their illegal operations created by their illegal and fraudulent use of the Mark. Eleventh Circuit Courts have authorized injunctive relief in similar cases involving the unauthorized use of a

plaintiff's trademark(s). *See Ain Jeem, Inc. v. Individuals, P'ships, & Unincorporated Ass'n Identified on Schedule "A"*, No. 8:21-cv-01261-VMC-JSS, 2021 U.S. Dist. LEXIS 135286, at *28 (M.D. Fla. July 19, 2021); *Certified Collectibles Grp., LLC v. Terrazas*, No. 8:24-cv-0301-KKM-AAS, 2024 U.S. Dist. LEXIS 29488, at *8–9 (M.D. Fla. Feb. 7, 2024); *Dell v. BelgiumDomains, LLC*, No. 07-22674, 2007 U.S. Dist. LEXIS 98647, at *37 (S.D. Fla. Nov. 2, 2007).

### ii.    Entry of an order prohibiting transfer of the Seller IDs during the pendency of this action is appropriate

To preserve the status quo, Plaintiff seeks an order temporarily modifying control and prohibiting Defendants from transferring use or control of the Seller IDs being used and controlled by Defendants to other parties. Once Defendants become aware of this litigation, they can easily, and often will, change the ownership or modify e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs given their illegal activity being conducted via the Internet, and thereby thwart this Court's ability to grant meaningful relief. Here, an interim order prohibiting Defendants from transferring their e-commerce stores operating under the Internet-based e-commerce platforms and Seller IDs poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Plaintiff full relief. Courts have granted this relief and similar relief in actions where the relied upon

instrumentalities of infringement and contact were e-commerce stores, domain names, and associated websites. *See Ain Jeem, Inc. v. Individuals, P'ships, & Unincorporated Ass'n Identified on Schedule "A"*, No. 8:21-cv-01261-VMC-JSS, 2021 U.S. Dist. LEXIS 135286, at *28 (M.D. Fla. July 19, 2021); *Certified Collectibles Grp., LLC v. Terrazas*, No. 8:24-cv-0301-KKM-AAS, 2024 U.S. Dist. LEXIS 29488, at *8–9 (M.D. Fla. Feb. 7, 2024); *Dell v. BelgiumDomains, LLC*, No. 07-22674, 2007 U.S. Dist. LEXIS 98647, at *37 (S.D. Fla. Nov. 2, 2007).

### iii.  An *ex parte* order restraining transfer of assets is appropriate

In addition to an order temporarily restraining Defendant's activities, the Court should enter an order limiting the transfer of Defendants' unlawfully gained assets. Plaintiff has demonstrated above that he will likely succeed on the merits of his claims. Accordingly, Plaintiff will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their counterfeiting scheme pursuant to 15 U.S.C. § 1117.

Given the deceptive nature of the counterfeiting business, and Defendants' deliberate violations of federal trademark law, Plaintiff respectfully requests this Court grant additional *ex parte* relief identifying payments accounts and restraining the transfer of all monies held or received by: (1) all possible online marketplace payment providers, including, but not limited to, Alipay, Wish.com, Worldpay, PayPal, the DHgate.com and Joom.com; (2) the online e-commerce platforms

directly, including, AliExpress, Ebay.com, Etsy.com, Amazon.com, TikTok.com; and (3) other financial institutions for the benefit of any one or more of the Defendants along with any other financial accounts tied thereto. *See SEC v. ETS Payphones*, 408 F.3d 727, 734 (11th Cir. 2005) (finding it proper to enjoin defendant's assets to preserve funds for the equitable remedy of disgorgement).

In light of the illicit nature of the counterfeiting business, and the ability of counterfeiters to practically eliminate evidentiary trails by conducting their business entirely over the Internet, courts in the Eleventh Circuit, among others, have particularly noted the significance of such asset restraints in cases involving counterfeiting defendants. *See*, *e.g.*, *Levi Strauss & Co. v. Sunrise Int'l Trading*, 51 F.3d 982 (11th Cir. 1995); *see also*, *e.g.*, *Twows, LLC v. Individuals, P'ships, & Unincorporated Ass'ns Identified Schedule "A"*, No. 8:23-cv-00139-WFJ-MRM, 2023 U.S. Dist. LEXIS 61814 (M.D. Fla. Apr. 7, 2023). Further, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants to prevent the transfer assets and ownership of Seller IDs "to assure the availability of permanent relief." *See Twows, LLC*, 2023 U.S. Dist. LEXIS 61814 at *7–8.

Here, Defendants' blatant violations of federal trademark law warrant an *ex parte* order restraining the transfer of their ill-gotten assets. Moreover, as Defendants' businesses are conducted mostly anonymously over the Internet,

Plaintiff has an additional cause for *ex parte* relief, as Defendants may easily hide or transfer their assets without the Court's or Plaintiff's knowledge.

### H.    Expedited Discovery

Pursuant to Federal Rule of Civil Procedure 26, federal courts may allow parties to conduct expedited discovery where good cause for such is shown. *See TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 615 (S.D. Fla. 2019). Good cause may be found where the need for expedited discovery outweighs the prejudice to the responding party when considering the administration of justice. *Id.* Plaintiff respectfully requests expedited discovery to discover the bank and payment service accounts Defendants use for their unlawful counterfeiting operations. The expedited discovery requested in the proposed order is limited to include only what is essential to prevent irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure these activities can be contained. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order, thus good cause exists.

The undersigned is aware that third-party marketplaces and payment services, like AliExpress, Ebay.com, Etsy.com, Amazon.com, and TikTok.com, have cooperated with trademark owners in prior cases under similar circumstances and

are accustomed to doing so as part of their business operations. These third parties can comply with these expedited discovery requests without undue burden.

### I.      A Bond Should Secure the Injunction

Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting and infringement, Plaintiff respectfully requests this Court to require it to post a bond of no more than six thousand dollars ($6,000.00), subject to increase at the Court's discretion, should an application be made in the interest of justice. The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

### IV.    CONCLUSION

WHEREFORE, Plaintiff respectfully requests this Court grant its *ex parte* application and enter a temporary restraining order as to Defendants, conditioned on Plaintiff posting a minimal bond. Additionally, due to the time provisions of a temporary restraining order, in the event the application is granted, Plaintiff respectfully requests the Court provide a copy of the temporary restraining order to Plaintiff's counsel via e-mail at litigation@firstiniplaw.com so that Plaintiff may immediately effectuate any relief ordered therein and provide Defendants' proper notice of the order and any subsequent hearing.

**DATED** this 12th day of December 2025.

        **BEUSSE SANKS, PLLC**

        /s/ Terry M. Sanks
        Terry M. Sanks, Esq.
        Florida Bar No. 0154430
        Liandra Izquierdo, Esq.
        Florida Bar No. 1033468
        612 E. Colonial Dr., Suite 250
        Orlando, FL 32803
        Telephone: (407) 644-8888
        Email:    tsanks@firstiniplaw.com;
        lizquierdo@firstiniplaw.com; and
        litigation@firstiniplaw.com
        ***Attorneys for Plaintiff***