IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE NO.: 8:25-cv-03398

**JOEL P. PRICE d/b/a JOEL PATRICK,**
an individual,

    Plaintiff,

v.

**THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A.**

    Defendants.
_____/

## [PROPOSED] ORDER ON PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

**THIS MATTER**, having come before the Court upon Plaintiff's *Ex Parte* Motion for Temporary Restraining Order and Order Restraining Transfer of Assets (herein "Plaintiff's Motion for TRO") (Doc. No. 3). The Plaintiff, JOEL P. PRICE d/b/a JOEL PATRICK, moves, *ex parte*, for entry of a temporary restraining order against Defendants, the Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" to the Complaint (collectively "Defendants"), and an order restraining the financial accounts used by Defendants pursuant to 17 U.S.C. § 502, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a).

Having reviewed the Motion, the Court file, and otherwise being fully advised on the premises, this Court **GRANTS** Plaintiff's Motion as follows:

## I.     FACTUAL BACKGROUND

Plaintiff is the owner of the following trademark registration, registered in the United States of America (herein the "Mark"):

| Trademark | Date of First Use | Registration Number | Registration Date | Class/Good |
|---|---|---|---|---|
| WHITE PRIVILEGE CARD | December 19, 2018 | 7,055,199 | May 16, 2023 | IC 020: Plastic printed novelty identification cards for entertainment purposes, not encoded and not magnetic |

*See* Declaration of Joel Patrick in Support of Plaintiff's Motion for TRO (herein "Patrick Decl.") at ¶ 2; s*ee also* a copy of Plaintiff's federally registered trademark attached as Exhibit A to the Complaint.

Defendants, through the various Internet based e-commerce stores operating under the seller identities and domain names identified on Schedule A to the Complaint (herein the "Seller IDs"), which has been filed under seal, have advertised, promoted, offered for sale, or sold golds bearing and/or using what the

Plaintiff has determined to be counterfeits or infringements of the Mark. *See* Patrick Decl. at ¶¶ 7–10.

Plaintiff has submitted sufficient evidence showing that each Defendant has infringed the Mark. *See* Exhibit B to the Complaint, which has been filed under seal. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Mark. *See* Patrick Decl. at ¶ 10.

Plaintiff investigated the promotion and sale of counterfeit and infringing versions of the Defendants' products. *See* Patrick Decl. at ¶¶ 7–10. Plaintiff accessed each of the e-commerce listings operating under the Defendants' Seller IDs and conducted a review of the products bearing the Mark, determining that the products bearing the Mark were unauthorized. *See id.* Plaintiff conducted a review of the counterfeit and infringing branded items and determined the products were nongenuine, unauthorized versions of the Plaintiff's products. *See id.*

Additionally, part of the Defendants are based outside the United States, and all of the Defendants are operating Internet-based business in which they must provide an e-mail address and physical address to the third-party platform. *See* Schedule A and Exhibit B to the Complaint, which have both been filed under seal. Few of the Defendants provide a verifiable or reliable physical address, whereas an

e-mail address is typically verified by the third-party platform and used by the Defendants to conduct their online business.

## II. LEGAL STANDARD

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

Federal Rules of Civil Procedure 4(h)(2) allows a foreign business entity to be served with process "in any manner prescribed by Rule 4(f)," including any manner ordered under Rule 4(f)(3)." *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 619 (S.D. Fla. 2011). A foreign partnership or other unincorporated association can therefore be served in the same manner as serving a foreign individual pursuant to Fed. R. Civ. P. 4(f)(3). *Id.* Rule 4(f)(3) allows alternative methods for service of process, so long as those methods are not prohibited by international agreement and are directed by the Court. *See Prewitt Enterprises, Inc. v. The Organization of Petroleum Exporting Countries*, 353 F.3d 916, 923 (11th Cir. 2003); *see also Rio Properties, Inc., v. Rio Intern. Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002).

### III.   CONLUSIONS OF LAW

The above finding of facts and the Declaration of Plaintiff submitted in support of its *Ex Parte* Motion for TRO support the following conclusions of law:

A.   Plaintiff has demonstrated a *prima facie* showing that this Court has specific jurisdiction over the Defendants. Defendants, alleged to be residing both in the United States and in China, are alleged to have committed a tortious act within the state of Florida in satisfaction of Fla. Stat. §48.193(1)(b). *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Additionally, jurisdiction is properly pled pursuant to Fed. R. Civ. P. 4(k)(2) because Plaintiff's claims arise under the

Federal Trademark (Lanham) Act and Defendants have not consented to jurisdiction in another state. *Viahart, LLC v. Does 1-54*, 2022 WL 4138590, *9-10 (E.D. Tex. July 18, 2022).

B.      Plaintiff has demonstrated a *prima facie* showing that venue is proper in this District because, for venue purposes, or venue purposes, "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3); *Island International Limited v. Island Stone India Private Limited*, 2017 WL 1437464, at *10 (M.D. Fla. Apr. 4, 2017) (in a trademark infringement action against a foreign resident, "for venue purposes, a lawsuit against him may be brought in any judicial district, including the Middle District of Florida.").

C.      Joinder of the Defendants in Schedule "A" is also appropriate under Rule 20(a) at this early stage of the proceeding to "secure the just, speedy, and inexpensive determination" of this action. *Malibu Media LLC v. Does 1-28*, 295 F.R.D. 527, 531 (M.D. Fla. 2012) (*citing* Fed. R. Civ. P. 1.). Joinder is proper in that Plaintiff's claims against these Defendants "arise out of the same transaction or occurrence" because Plaintiff has alleged a logical connection between each Defendant, namely the "occurrence of mass harm" resulting from Defendants' concerted efforts to anonymously commit copyright infringement through the online platforms. *Bose Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* 334 F.R.D. 511, 517 (N.D. Ill. 2020). Moreover, Plaintiff demonstrates some

concerted action between the Defendants given the similarities between the Defendants listings on the platforms. *See WowWee Group Ltd. v. Merily*, 2019 WL 1375470, at *6 (S.D.N.Y. Mar. 27, 2019) ("significant similarities" across the defendants' storefronts on Wish.com was a "logical relationship" between the Defendants supporting permissive joinder where no defendants had appeared to assert potentially conflicting defenses).

   D. Plaintiff has a strong probability of proving at trial that (1) Plaintiff is the owner of a valid trademark, (2) consumers are likely to be confused by the Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Mark, and (3) the products Defendants are selling and promoting for sale are copies of the Plaintiff's products.

   E. Because of the infringement of the Mark, Plaintiff is presumed to likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. *See* 15 U.S.C. § 1116(a); *see also Levi-Strauss & Co.*, 51 F.3d at 986 ("This court has previously stated that trademark infringement [and counterfeit activities] by its nature causes irreparable harm."). Plaintiff has shown irreparable harm is likely, not merely possible, in the absence of an injunction. The Court finds that there is a substantial likelihood that immediate and irreparable loss, damage, and injury

may result to Plaintiff before the Defendants can be heard in opposition unless the Plaintiff's request for *ex parte* relief is granted:

   1. Defendants own or control Internet based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of Plaintiff's rights;

   2. There is good cause to believe that more counterfeit and infringing products bearing the Mark will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed as to the source of the counterfeited products; that Plaintiff may suffer loss of sales for its genuine products; and that Plaintiff may suffer erosion of the goodwill connected to Plaintiff's respective brand and erosion of the legitimate marketplace in which it operates;

   3. There is good cause to believe that if Plaintiff proceeds on notice to Defendants of this Motion for TRO, Defendants can easily and quickly change the ownership or modify domain registration and e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of Seller IDs thereby thwarting Plaintiff's ability to obtain meaningful relief;

 F. The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing products if a temporary restraining order is issued is far

outweighed by the potential harm to Plaintiff, its reputation, and its goodwill if such relief is not granted;

G. The public interest favors issuance of the temporary restraining order to protect Plaintiff's trademark interests, to encourage respect for the law, and to protect the public from being defrauded by the illegal sale of counterfeit goods;

H. Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales or goods bearing counterfeits and infringements of the Mark. *See Reebok Int'l, Ltd. v. Marnatach Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits … is an equitable remedy subject to the principles of equity.'"));

I. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984));

J. In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff

has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained; and

    K.    Alternative service of process under rule 4(f)(3) is warranted.

    1.    The Defendants use at least one known and valid form of electronic contact to conduct their Internet-based businesses, and the Plaintiff has created a website for the sole purpose of providing notice of this action to the Defendants, the address to which will be provided to the Defendants' known e-mail accounts and onsite contact forms. Therefore, service via e-mail and through posting on a designated website is "reasonably calculated, under all circumstances, to apprise [Defendants] of the pendency of the action and afford them an opportunity to present their objections." *See Brookshire Brothers, Ltd.*, 2007 WL 1577771, at *1.

Accordingly, the Court hereby **ORDERS AND ADJUDGES** that Plaintiff's *Ex Parte* Motion for Temporary Restraining Order is **GRANTED**, under the terms set forth below:

(1)    Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are temporarily enjoined and restrained as follows:

    a.    From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing Plaintiff's Mark;

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any product not manufactured or distributed by Plaintiff, bearing the Mark; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Mark; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants;

    c. From using any reproduction, counterfeit, copy, or colorable imitation of Plaintiff's Mark in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; and

    d. From otherwise competing unfairly with Plaintiff in any manner.

  (2) Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the use of any unauthorized products displaying the Mark on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

  (3) Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any

of the Defendants having notice of this Order shall immediately discontinue exercising control over, owning, operating, and/or hosting any website or marketplace account that are involved with the distribution, marketing, advertising, offering for sale, or sale of the counterfeit or infringing products.

(4) Each of the Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

(5) Defendants shall not transfer or dispose of any money or other of Defendants' assets in any of Defendants' financial accounts until further ordered by this Court, except by written agreement with Plaintiff.

(6) Upon receipt of notice of this Order, Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, including but not limited to, including AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, Paypal, and/or Taobao, and other platforms, and their related companies and affiliates (herein, collectively, the "Third Party Providers"), shall within five (5) business days after receipt of notice of this Order:

    a. Restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for Defendants' benefit or to be transferred into Defendants' respective financial accounts, restrain any other financial accounts

tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court, and

        b.     Provide Plaintiff expedited discovery of the following: (i) the identity of all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores operating under the Seller IDs identified on Schedule A hereto as well as any other accounts of the same customer(s); (ii) the identity and location of Defendants identified in Schedule A, including all known contact information including any and all known aliases and associated e-mail addresses; of their officers, agents, servants, employees, attorneys, and any persons acting in active concert or participation with them; (iii) an accounting of the total funds restrained and identities of the financial account(s) and sub-account(s) for which the restrained funds are related; and (iv) the nature of Defendants' operations and all associated sales, methods of payment for services, and financial information, including without limitation, identifying information associated with the various

Internet based e-commerce platforms and Defendants' financial accounts, including Defendants' sales and listing history related to their respective Internet based e-commerce platforms. No funds restrained by this Order shall be transferred or surrendered by the governing Internet based e-commerce platform for any purpose (other than pursuant to a chargeback made to any security interest in the funds) without the express authorization of this Court or at the written authorization and direction of Plaintiff.

(7) Any Defendant or Third Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

(8) This Order shall apply to the Seller IDs, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of infringing the Mark at issue in this action and/or unfairly competing with Plaintiff.

(9) Pursuant to Fed. R. Civ. P. 4(f)(3), as sufficient cause has been shown, that the service of this Order and the Summons and Complaint (including Schedule A and Exhibit B to the Complaint, which have been filed under seal) may be made on, and shall be deemed effective as to Defendants, if it is completed by the following means:

   a. Delivery of: (i) PDF copies of this Order together with the summons and complaint; (ii) a link to a website where each Defendant will be able to download PDF copies of this Order together with the summons and complaint, and all papers filed in support of Plaintiff's application (the a "Link") to Defendants' e-mail addresses as provided by the financial institutions, Internet based e-commerce platforms, and/or e-mail addresses currently known to Plaintiff;

   b. Where applicable and known, requesting that the Internet based e-commerce platforms cause Defendants' online marketplace website(s) to redirect to the Link; and

 (10) The Clerk of the Court is directed to issue a single original summons in the name of "Defendants Identified in Schedule 'A' of the Complaint" that shall apply to all Defendants. The combination of providing notice via electronic publication and e-mail, along with any notice Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

 (11) The Internet-based e-commerce platforms, including, but not limited to, Ebay.com, Etsy.com, Amazon.com, TikTok.com, shall within three (3) business days of this Order, identify and restrain all funds, as opposed to ongoing account activity, in or which hereafter are transmitted into the e-commerce accounts related to each

respective Defendant as identified on Schedule "A" to the Complaint, as well as all funds in or which are transmitted into (i) any other accounts of the same customer(s), (ii) any other accounts which transfer funds into the same financial institution account(s), and/or any of the other e-commerce accounts subject to this Order and/or tied to Defendants as identified on Schedule "A" to the Complaint.

(12) This Order shall remain in effect for two weeks from the date of entry of this Order and expires on _____, 202_, at _____ AM/PM.

(13) Pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65(c), the Plaintiff shall post a bond in the amount of Six Thousand Dollars and Zero Cents ($6,000.00), as payment of damages to which the Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

(14) After Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiff shall serve copies of the Complaint, Application for Temporary Restraining Order, and this Order, on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective Seller IDs or by providing a copy of this Order by email to the marketplace platforms for each of the Seller IDs

so that the registrar, or marketplace platform, in turn, notifies each of Defendants of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.

(15)   A hearing is set before this Court via _____ on _____, 2025, at _____ AM/PM, at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction. Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116; Fed. R. Civ. P. 65, the All Writs Act, 28 U.S.C. § 1651(a); and this Court's inherent authority.

(16)   The Clerk shall file this Order under seal until further Order of the Court.

**DONE AND ORDERED** in Orlando, Florida on this ___ day of December, 2025.

_____
UNITED STATES DISTRICT JUDGE