AO 120 (Rev. 08/10)

| TO: Mail Stop 8<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court _____Middle District of Florida_____ on the following

✖ Trademarks or ☐ Patents.  ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>**8:25-cv-03398-KKM-AEP** | DATE FILED<br>**12/12/2025** | U.S. DISTRICT COURT<br>Middle District of Florida | |
|---|---|---|---|
| PLAINTIFF<br><br>**Joel Price** | | DEFENDANT<br><br>**The Individuals, Partnerships, and Unincorporated Associations**<br>**Identified on Schedule A** | |
| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK | |
| 1 **See Attached**<br>**Complaint** | | | |

| CLERK<br>ELIZABETH M. WARREN | (BY) DEPUTY CLERK<br>Julissa Soto | DATE<br>**December 15, 2025** |
|---|---|---|

**Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| **JOEL P. PRICE d/b/a JOEL PATRICK,** an individual, | **CASE NO.:** |
| **Plaintiff,** | **DEMAND FOR JURY TRIAL** |
| v. | |
| **THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,** | |
| **Defendants.** | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, JOEL P. PRICE d/b/a JOEL PATRICK, an individual, (herein "Joel Patrick" or "Plaintiff"), hereby sues Defendants, THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, filed under seal (collectively herein the "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law

trademark infringement pursuant to the Lanham Act, 15 U.S.C. §§ 1114, 1116, and 1125(a), and the All Writs Act, 28 U.S.C. § 1651(a).

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action under Section 39 of Lanham Act, 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338, and the All Writs Act, 28 U.S.C. § 1651(a). Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

3.     This Court has personal jurisdiction over Defendants because, among other reasons, Defendants are doing business in Florida and this District by committing tortious acts including trademark infringement and counterfeiting and unfair competition. Defendants purposefully direct their business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this District through at least the internet-based e-commerce stores identified on the Schedule "A" filed under seal. Furthermore, Defendants' internet-based e-commerce stores are accessible by consumers within the State of Florida and this District. *CreeLED, Inc. v. Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 8:22-cv-2379-MSS-TGW, 2022 WL 18927025, at *2–3 (M.D. Fla. Dec. 2, 2022) (finding exercising

personal jurisdiction appropriate and venue proper in this District for trademark infringement case against defendants residing or operating in China); *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (holding that the allegation that defendant's website contained an infringing and deceptive use of plaintiff's trademark was a tortious act "within this state"); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353, 1353 n.8 (11th Cir. 2013) (applying the analysis of Lovelady that "a website-trademark infringement claim against a nonresident defendant" is treated as a "tortious act" for purposes of Florida's long-arm statute).

4.    Personal jurisdiction is also proper under Federal Rule of Civil Procedure 4(k)(2) because Defendants are not subject to jurisdiction in any state's courts of general jurisdiction and exercising jurisdiction is consistent with the United States Constitution and laws.

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because, among other reasons, Defendants transact business within this District, provide direct commercial transactions with consumers in this District, and a substantial part of the events giving rise to the claims occurred in this District. THE PLAINTIFF

6.    Plaintiff, Joel Patrick, is an individual residing and existing under the laws of the State of Florida, in Odessa, Florida.

7.    Joel Patrick owns and maintains a United States trademark registration for the mark WHITE PRIVILEGE CARD (Reg. No. 7,055,199) (herein the "Mark"),

in connection with plastic printed novelty identification cards for entertainment purposes. Plaintiff is engaged in the development, manufacture, promotion, distribution, and sale in interstate commerce, throughout the United States, including within this District, of a variety of quality goods, using multiple common law and federally registered trademarks.

8.      Joel Patrick has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Mark and associated goods and services in the United States.

## THE DEFENDANTS

9.      Upon information and belief, Defendants are individuals and/or business entities of unknown makeup, each based in foreign jurisdictions that own and/or operate one or more e-commerce stores in a concerted effort to profit from the goodwill associated with Plaintiff's intellectual property by selling and offering to sell the same or substantially the same counterfeit and infringing goods via the same or similar sales channels, all in direct violation of Plaintiff's exclusive rights. *See* Schedule "A," filed under seal, which contains links to each of Defendants' e-commerce stores.

10.      Defendants' business names (herein the "Subject Domain Names" and "Seller IDs"), associated payment accounts, and any other alias seller identification names used in connection with the sale of *the same or materially similar* counterfeit

and infringing goods bearing one or more of Plaintiff's trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff. Moreover, Defendants are using Plaintiff's Mark to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs, and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

11.    Defendants are the past and/or present controlling forces behind the sale of products bearing and/or using counterfeits of Plaintiff's Mark as described herein using the Subject Domain Names or via Internet-based e-commerce stores and Internet marketplace websites under the Seller IDs.

12.    Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b) as Defendants target their business activities toward consumers throughout the United States, including within this District, and conduct pervasive business through the simultaneous operation of at least, the fully interactive commercial Internet websites under the Subject Domain Names or via Internet-based e-commerce stores via Internet marketplace websites under the Seller IDs.

13.    Upon information and belief, Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods,

bearing and/or using counterfeits and infringements of Plaintiff's individual Mark to consumers within the United States and this District through Internet-based e-commerce stores, using, at least, the Subject Domain Names and Seller IDs, as well as additional seller identification aliases not yet known to Plaintiff. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida, including within this District through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

14.    Upon information and belief, Defendants have registered, established, or purchased, and/or maintained their Subject Domain Names, Seller IDs, and Internet-based e-commerce stores.

15.    Upon information and belief, some Defendants have registered and/or maintained some of the Subject Domain Names and Seller IDs for the sole purpose of engaging in illegal activities.

16.    Upon information and belief, Defendants will continue to register or acquire new domain names and seller identification aliases for the purpose of selling and offering for sale goods bearing and/or featuring counterfeit and/or confusingly similar imitations of Plaintiff's Mark unless preliminarily and permanently enjoined.

17.    Upon information and belief, Defendants use their Internet-based businesses to infringe the intellectual property rights of Plaintiff.

18. Defendants' Subject Domain Names and Seller IDs, associated payment accounts, and any other alias domain names and seller identification names used in connection with the sale of counterfeit and infringing goods bearing and/or using Plaintiff's Mark are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringing scheme and cause harm to Plaintiff.

19. Joinder is appropriate at this time under Federal Rule of Civil Procedure 20(a)(2) because Plaintiff asserts rights to relief against those Defendants jointly, severally, or, in the alternative, with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in action. Fed. R. Civ. P. 20(a)(2); *see* Wright & Miller, 7 *Fed. Prac. & Proc. Civ.* § 1660 (3d ed. 2025) ("The general philosophy of the joinder provisions of the federal rules is to allow virtually unlimited joinder at the pleading stage but to give the district court discretion to shape the trial to the necessities of the particular case.").

## FACTS COMMON TO ALL CLAIMS

### *Joel Patrick's Brand and Trademark*

20.    Joel Patrick is the owner of all rights in and to the following Mark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office:

| Trademark | Registration Number | First Use In Commerce | Registration Date | Class(es) / Good(s) |
|---|---|---|---|---|
| WHITE PRIVILEGE CARD | 7,055,199 | December 19, 2018 | May 16, 2023 | Class 20: Plastic printed novelty identification cards for entertainment purposes, not encoded and not magnetic |

A true and correct copy Joel Patrick's federal trademark for the Mark and accompanying Assignment *Nunc Pro Tunc* of all rights attached hereto collectively as Exhibit A.

21.    Joel Patrick's Federal Registration (Reg. No. 7,055,199) for his Mark constitutes prima facie evidence that the recited mark is valid and that Joel Patrick is entitled to exclusive use of the Mark in commerce throughout the United States for plastic printed novelty identification cards and in connection with goods and services related thereto. *See* 15 U.S.C. §§ 1115(a) and 1057(b).

22.    Additionally, Joel Patrick's Federal Registration (Reg. No. 7,055,199) provides constructive notice to Defendants of Plaintiff's ownership and exclusive rights to the Mark. *See* 15 U.S.C. § 1057(b).

23.    Plaintiff's products are distributed and sold through authorized retailors and via authorized internet websites throughout the United States, including in the State of Florida and this District. Plaintiff does not offer its merchandise for sale through individuals of unauthorized retail locations or unauthorized e-commerce resellers.

24.    Plaintiff's Mark has been extensively and continuously used in interstate commerce to identify and distinguish his quality of goods, and, importantly, Joel Patrick's Mark has been in use by Plaintiff before the Defendants' sale and distribution of the counterfeits of the Mark and associated goods.

25.    Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Mark. As a result, products bearing and/or using the mark WHITE PRIVILEGE CARD are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Plaintiff and have acquired strong secondary meaning.

26.    The Mark at issue in this case has been continuously used in interstate commerce and has never been abandoned.

27. Joel Patrick has carefully monitored and policed the use of the Mark and has never assigned or licensed the Mark to any of the Defendants in this matter.

28. Plaintiff suffers ongoing daily and sustained violations of his respective trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiff's individual Mark for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's respective Mark and the destruction of the legitimate market sector in which it operates.

29. In order to combat the indivisible harm caused by the combined actions of individuals like Defendants, Plaintiff expends significant resources in connection with trademark enforcement efforts. The exponential growth of counterfeiting over the Internet has created an environment that requires companies, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and it from the ill effects of confusion and the erosion of the goodwill connected to Plaintiff's respective brand.

### *Defendants' Infringing Activities*

30. Upon information and belief, Defendants are individuals and/or business entities of unknown makeup, each based in foreign jurisdictions that own and/or operate one or more e-commerce stores.

31.     Upon information and belief, each of the Defendants knowingly and willfully advertise, display, sell, deliver, promote, advertise, distribute and/or offer for sale infringing goods (herein the "Counterfeit Goods") in interstate commerce bearing and/or using the Mark and/or using the Mark to advertise other cards, suggesting an association with Plaintiff, resulting in substantial and continuous harm to the rights of Plaintiff. Defendants conduct their activities through, at least, the commercial Internet websites or Internet-based e-commerce stores operating under the Subject Domain Names and Seller IDs. *See* **Exhibit B** filed under seal which contains true and correct copies of screenshot printouts showing the e-commerce stores and/or listings for each of the Defendants. The products shown on said **Exhibit B** are the Counterfeit Goods bearing and/or using the Mark.

32.     Several Defendants are also using, at least, the listings and associated images identified by the Amazon Standard Identification Numbers ("ASIN") on Schedule "A" filed under seal referenced herein. Thus, upon information and belief, some Defendants are using virtually identical copies of Joel Patrick's product and the Mark for different, sub-par quality goods. *See* **Exhibit B** as it relates to Amazon.com.

33.     Defendants have no license, authority, or other permission from Plaintiff to use the Mark in connection with any advertising, displaying, selling, delivery, promotion, advertising, distribution and/or offering for sale of any products

or packaging. Thus, the Defendants' use of the Mark, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

34.    The acts of Defendants constitute direct trademark infringement in violation of federal and state law.

35.    Upon information and belief, Defendants' Counterfeit Goods are of a substantially and materially different quality than Plaintiff's respective, genuine goods. Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for Plaintiff's genuine quality goods despite Defendants' knowledge that they are without authority to use Plaintiff's Mark.

36.    The acts of Defendants are intended to cause, have caused, and/or likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Counterfeit Goods and other similar goods, descriptions, and packaging offered for sale and sold by Defendants are authentic or authorized products and packaging originating with Plaintiff.

37.    As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, all employing and benefitting from substantially similar marketing strategies based, in large measure, upon an illegal

use of counterfeits and infringements of the Mark. Specifically, Defendants are using counterfeits and infringements of Plaintiff's Mark in order to make their websites and e-commerce stores selling illegal goods to appear more relevant and attractive to consumers online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's respective genuine goods. Defendants are causing individual, concurrent, and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, and (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's Mark.

38.    The acts of Defendants are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the infringing products and Plaintiff.

39.    Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's respective ownership of the Mark, including its respective, exclusive rights to use and license such intellectual property and the goodwill associated therewith, and Defendants were well aware of the fame and strength of the Mark along with the incalculable goodwill associated therewith.

40.     Further, Defendants are engaging in the above-described illegal infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights, for the purpose of trading on Plaintiff's goodwill and reputation.

41.     Defendants are knowingly and deliberately hijacking the Mark, and their sales of the Counterfeit Goods are not only willful and malicious, but also have caused, and continue to cause, substantial and irreparable harm to Plaintiff's goodwill and reputation. In addition, the damages caused by Defendants are especially severe because the Counterfeit Goods are inferior in quality to the authentic ones produced by Plaintiff.

42.     Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the Mark. If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

43.     Moreover, Plaintiff has no ability to control the quality of the counterfeit and infringing goods provided by Defendants in conjunction with Plaintiff's Mark, and, therefore, is at risk of irreparable harm for which there is no remedy at law and which money damages cannot repair.

44.    Upon information and belief, Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A", are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their Subject Domain Names and Seller IDs and any other alias domain names, websites, or seller identification names being used and/or controlled by them.

45.    Further, upon information and belief, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff, especially considering that Defendants are non-U.S. entities. Where enforcing a ruling in their respective jurisdiction may not be possible. There is no adequate remedy at law in the event of such asset transfer.

46.    The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

47.    Plaintiff seeks damages, including treble exemplary damages, statutory damages, and attorney's fees and costs, as a result of Defendants' knowing, deliberate, and willful infringement of the Mark, and any other available relief pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## COUNT I – TRADEMARK INFRINGEMENT OF REG. NO. 7,055,199 (15 U.S.C. § 1114(1))

48.     Plaintiff hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 47 above.

49.     This claim is against Defendants for trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

50.     Defendants have used and is using in commerce spurious designations that are identical to, or substantially indistinguishable from, the Mark.

51.     Upon information and belief, Plaintiff alleges that, at all times relevant to this action, including when Defendants first adopted its infringing use of the Mark and commenced commercial use of the same, Defendants knew of Plaintiff's prior adoption and widespread commercial use of the Mark in connection with the wholesale manufacture and distribution of plastic printed novelty identification cards and related goods and services, and Defendants knew of the valuable goodwill and reputation acquired by Plaintiff in connection with its Mark. Thus, Defendants' infringement of the Mark is willful and deliberate.

52.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that the infringing products, descriptions, and packaging offered for sale and sold by Defendants are authentic or authorized products featuring the Mark of Plaintiff.

53.    Plaintiff never consented to or authorized Defendants' adoption or commercial use of the Mark for any purpose.

54.    Defendants' acts, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Counterfeit Goods and Plaintiff.

55.    Defendants' acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. As established by the registration of the Mark under Federal Reg. No. 7,055,199, Plaintiff's Mark is protectable and enforceable against Defendants.

56.    Moreover, Defendants' actions have caused a likelihood of confusion and damage to Plaintiff. In particular, through infringement of the Mark, Defendants are harming Plaintiff and diverting sales that would otherwise go to Plaintiff, as well as inserting into the stream of commerce inauthentic, counterfeit, or otherwise infringing products that will be believed by consumers to be the authentic products of Plaintiff. Defendants' infringement of the Mark is likely to cause confusion and mistake as to the source of Defendants' Counterfeit Goods.

57.    Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Plaintiff is entitled to recover from Defendants: (i) Defendants' profits and (ii) the costs of this action. Due to the knowing, intentional, and purposeful nature of Defendants' conduct, Plaintiff seeks treble damages pursuant to 15 U.S.C. § 1117(b).

17

58.    Additionally, Defendants' activities have caused and will continue to cause irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law, in that: (i) Plaintiff's WHITE PRIIVLEGE CARD Mark is a unique and valuable property right that has no readily determinable market value; (ii) Defendants' infringement constitutes an interference with Plaintiff's goodwill and customer relationships and will substantially harm Plaintiff's reputation as a source of high quality goods and services, as well as dilute the substantial value of Plaintiff's White Privilege Card name, logo, and trademark; and (iii) Defendants' wrongful conduct, and the resulting damages to Plaintiff, are continuing. Accordingly, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116(a), 17 U.S.C. § 502(a), Federal Rule of Civil Procedure 65, and to an order under 15 U.S.C. § 1118 impounding all goods and other materials in Defendants' possession, custody, or control that bearing and/or using Plaintiff's Mark.

59.    This is an exceptional case, further entitling Plaintiff to additional remedies, including, the recovery of its attorneys' fees and costs incurred in prosecuting this action and stopping Defendants' willful trademark infringement, pursuant to 15 U.S.C. § 1117.

## COUNT II – TRADEMARK COUNTERFEITING OF REG. NO. 7,055,199 (15 U.S.C. § 1114(1))

60.    Plaintiff hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 47 above.

61.    Defendants have used and is using in commerce spurious designations that are identical to, or substantially indistinguishable from, the Mark.

62.    Without Plaintiff's consent, Defendants used in commerce the Mark and/or substantially indistinguishable variations or counterfeits thereof, as defined under 15 U.S.C. § 1116(d)(1)(B)(i), in connection with the sale, offering for sale, and/or distribution of Defendants' goods and services through at least the Internet-based e-commerce stores identified on the Schedule "A" filed under seal.

63.    Without Plaintiff's consent, Defendants reproduced, counterfeited, copied, or colorably imitated Plaintiff's Mark and applied such reproduction, counterfeit, copy, or colorable imitation to advertisements, as defined under 15 U.S.C. § 1116(d)(1)(B)(ii), intended to be used in commerce upon or in connection with the sale, offering for sale, or advertising of Defendants' goods and services in a manner likely to cause confusion, or to cause mistake, or to deceive.

64.    Additionally, Defendants are continuously infringing and inducing others to infringe Plaintiff's Mark by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods through at least the Internet-based e-commerce stores identified on the Schedule "A" filed under seal.

65.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' goods, and, thus, constitute counterfeiting of Plaintiff's federally registered Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

66.     Defendants' acts, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the counterfeited products and Plaintiff.

67.     Upon information and belief, Plaintiff alleges that, at all times relevant to this action, including when Defendants first adopted its infringing use of the Mark and commenced commercial use of the same, Defendants knew of Plaintiff's prior adoption and widespread commercial use of the Mark in connection with the wholesale manufacture and distribution of plastic printed novelty identification cards and related goods and services, and Defendants knew of the valuable goodwill and reputation acquired by Plaintiff in connection with its Mark. Thus, Defendants' counterfeiting of the Mark is willful and deliberate.

68.     As a direct and proximate result of Defendants' ongoing unlawful actions as alleged above, Plaintiffs have been harmed and will continued to undergo unquantifiable damages to Plaintiff, especially where Defendants are unjustly enriching with profits at Plaintiff's expense, diverting sales that would otherwise go

to Plaintiff, and inserting into the stream of commerce inauthentic, counterfeit, or otherwise infringing products that will be believed by consumers to be the authentic products of Plaintiff.

69.    Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Plaintiff is entitled to recover from Defendants: (i) Defendants' profits and (ii) the costs of this action. Alternatively, due to Defendants' willful counterfeiting, Plaintiff is entitled to statutory damages of up to two million dollars ($2,000,000.00) per counterfeit mark, per type of goods. Due to the knowing, intentional, and purposeful nature of Defendants' conduct, Plaintiff seeks treble damages pursuant to 15 U.S.C. § 1117(b).

70.    This is an exceptional case, further entitling Plaintiff to additional remedies, including, the recovery of its attorneys' fees and costs incurred in prosecuting this action and stopping Defendants' willful trademark infringement, pursuant to 15 U.S.C. § 1117.

71.    Additionally, Defendants' activities have caused and will continue to cause irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law, in that: (i) Plaintiff's Mark is a unique and valuable property right that has no readily determinable market value; (ii) Defendants' infringement constitutes an interference with Plaintiff's goodwill and customer relationships and will substantially harm Plaintiff's reputation as a source of high quality goods and services, as well as dilute

the substantial value of Plaintiff's White Privilege Card name, logo, and trademark; and (iii) Defendants' wrongful conduct, and the resulting damages to Plaintiff, are continuing. Accordingly, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116(a), 17 U.S.C. § 502(a), Federal Rule of Civil Procedure 65, and to an order under 15 U.S.C. § 1118 impounding all goods and other materials in Defendants' possession, custody, or control that bearing and/or using Plaintiff's Mark.

## COUNT III – FALSE DESIGNATION OF ORIGIN OR FALSE DESCRIPTION
### (15 U.S.C. § 1125(a))

72.     Plaintiff hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 47 above.

73.     Upon information and belief, Defendants' infringing and counterfeited goods bearing, using, offered for sale, advertised, distributed and/or sold using copies of Plaintiff's Mark have been widely advertised, offered for sale, and distributed throughout the United States via at least the fully interactive commercial Internet websites, Internet marketplace websites, and the Internet-based e-commerce stores identified on the Schedule "A" filed under seal.

74.     Defendants' infringing and counterfeited goods bearing, offered for sale, and sold using copies of Plaintiff's Mark are virtually identical in appearance to Plaintiff's respective genuine goods. Accordingly, Defendants' activities are likely

to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their infringing and counterfeited goods.

75.    Upon information and belief, Defendants have used Plaintiff's Mark in connection with their advertisement, offer for sale, and sale of their infringing and counterfeited goods resulting in the false designations of origin, false descriptions, and false representations that tend to falsely describe or represent Defendants' goods; thus, Defendants have caused its infringing and counterfeited goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

76.    Additionally, Defendants are authorizing infringing uses of Plaintiff's Mark and inducing others to infringe Plaintiff's Mark by misrepresenting to members of the consuming public that the infringing and counterfeited goods being advertised and sold by Defendants through at least the Internet-based e-commerce stores identified on the Schedule "A" filed under seal are genuine, non-infringing goods.

77.    Defendants are also using counterfeits and infringements of the Mark in order to unfairly compete with Plaintiff for space within organic search engine results, thereby depriving Plaintiff of a valuable marketing and educational tool that would otherwise be available to Plaintiff and reducing the visibility to members of

the consuming public of Plaintiff's respective, genuine goods on the World Wide Web.

78.    Defendants have unfairly profited from the infringing actions alleged herein and their actions at all times have been willful and deliberate in disregard of Plaintiff's trademark rights.

79.    Defendants' use in commerce of Plaintiff's Mark in Defendants' domain names, on Defendants' websites, and in Defendants' advertising is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendants' activities are authorized, sponsored, or approved by, or are affiliated with Plaintiff, and constitutes trademark infringement and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

80.    As a direct and proximate result of the actions of Defendants as alleged above, Plaintiffs have been and will continue to be irreparably harmed.

81.    Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Plaintiff is entitled to recover from Defendants: (1) Defendants' profits and (ii) the costs of this action. Due to the knowing, intentional, and purposeful nature of Defendants' conduct, Plaintiff seeks treble the amount of their damages. Plaintiff also seeks their reasonable attorney's fees due to the exceptional nature of this case.

82.    Additionally, Defendants' activities have caused and will continue to cause irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law,

in that: (i) Plaintiff's Mark is a unique and valuable property right that has no readily determinable market value; (ii) Defendants' infringement constitutes an interference with Plaintiff's goodwill and customer relationships and will substantially harm Plaintiff's reputation as a source of high quality goods and services, as well as dilute the substantial value of Plaintiff's White Privilege Card name, logo, and trademark; and (iii) Defendants' wrongful conduct, and the resulting damages to Plaintiff, are continuing. Accordingly, Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief pursuant to 15 U.S.C. § 1116(a), 17 U.S.C. § 502(a), Federal Rule of Civil Procedure 65, and to an order under 15 U.S.C. § 1118 impounding all goods and other materials in Defendants' possession, custody, or control that bearing Plaintiff's Mark.

## COUNT IV – COMMON LAW UNFAIR COMPETITION

83.    Plaintiff hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 47 above.

84.    This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing and/or using marks that are virtually identical, both visually and phonetically, to Plaintiff's Mark in violation of Florida's common law of unfair competition.

85.    Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing and/or using counterfeits and

infringements of Plaintiff's Mark. Defendants are also using counterfeits and infringements of Plaintiff's Mark to unfairly compete with Plaintiff and others for (i) space in search engine results across an array of search terms and (ii) visibility on the World Wide Web.

86.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of Plaintiff's Mark.

87.    Plaintiff has no adequate remedy at law and are suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT V – COMMON LAW TRADEMARK INFRINGEMENT

88.    Plaintiff hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 47 above.

89.    This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their infringing and counterfeit goods bearing and/or using Plaintiff's Mark. Plaintiff is the respective owner of all common law rights in and to the Mark.

90.    Specifically, upon information and belief, Defendants are manufacturing, promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of Plaintiff's Mark.

91.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' infringing and counterfeited goods bearing and/or using Plaintiff's Mark.

92.    Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

A.    Entry of temporary, preliminary, and permanent injunctions, pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a),  and Federal Rule of Civil Procedure 65, enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their infringing or counterfeit goods; from infringing, counterfeiting, or diluting Plaintiff's Mark; from using Plaintiff's Mark, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing

27

themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiff's Mark in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's Mark; and from otherwise unfairly competing with Plaintiff;

B.     Entry of a temporary restraining order, as well as preliminary and permanent injunctions, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), enjoining Defendants and all third parties, including, but not limited to the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs, including providing financial services, technical services or other support to, who are provided with actual notice of an injunction issued by the Court from participating in the sale and distribution of non-genuine goods bearing and/or using counterfeits of Plaintiff's Mark;

C. Entry of a temporary restraining order, as well as preliminary and permanent injunctions, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), enjoining Defendants and all third parties, including, but not limited to the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs, including providing financial services, technical services or other support to, who are provided with actual notice of an injunction issued by the Court to disable and/or cease the facilitation of access to the Seller IDs, and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeit and infringement of Plaintiff's Mark;

D. Entry of an Order pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and the Court's inherent authority that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court permanently remove any and all listings and associated images of goods bearing counterfeits and/or infringements of Plaintiff's Mark via the e-commerce stores operating under the Seller IDs, and upon Plaintiff's request, any other listings and images of goods bearing counterfeits and/or infringements of Plaintiff's Mark associated with and/or linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants, and any domain names being used and/or controlled by Defendants

to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of Plaintiff's Mark;

E.    Entry of an Order, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), that, upon Plaintiff's request, any Internet marketplace website operators, administrators, registrar and/or top-level domain (TLD) Registry who are provided with notice of the injunction, identify any e-mail address known to be associated with Defendants' respective Subject Domain Name or Seller IDs;

F.    Entry of an Order pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, permanently remove from the multiple platforms, which include, inter alia, a Direct platform, Group platform, Seller Product Management platform, Vendor Product Management platform, and Brand Registry platform, any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of Plaintiff's Mark via the e-commerce stores operating under the Seller IDs, including but not limited to the listings and associated images identified by the items marked on Schedule "A" filed under seal annexed hereto, and any other listings and images of goods bearing counterfeits and/or infringements of Plaintiff's Mark associated with any e-commerce listing linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by

Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of Plaintiff's Mark;

G.      Entry of an Order pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction immediately cease fulfillment of and sequester all goods of each Defendants bearing and/or using Plaintiff's Mark in its inventory, possession, custody, or control, and surrender those goods to Plaintiff, or, in the alternative according to 15 U.S.C. § 1118, be surrendered for destruction;

H.      Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiff's election with respect to Count I and Count II, that Plaintiff be awarded statutory damages from each Defendants in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2);

I.      Entry of an Order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in

31

all financial accounts and/or sub-accounts used in connection with the Subject Seller IDs or other domain names, websites, alias seller identification names and/or e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein;

J.      In accordance with 15 U.S.C. 1125(c)(1), enjoin Defendants from further infringing on Plaintiff's Mark;

K.      In accordance with 15 U.S.C. § 1117(a), find this case to be exceptional in Plaintiff's favor and award Plaintiff the reasonable costs, attorneys' fees, and investigative fees associated with bringing this action;

L.      Award Plaintiff pre-judgment and post-judgment interest at the maximum allowable interest rate; and

M.      Grant Plaintiff such other and further relief, at law or in equity, as the Court may deem just and proper.

**DATED:** December 12, 2025

Respectfully submitted,

**BEUSSE SANKS, PLLC**
612 E. Colonial Drive, Suite 250
Orlando, FL 32803
Telephone: (407) 644-8888
Email: tsanks@firstiniplaw.com;
lizquierdo@firstiniplaw.com;
litigation@firstiniplaw.com
*Attorneys for Plaintiff, JOEL P.*
*PRICE d/b/a JOEL PATRICK*

*/s/ Terry M. Sanks*
Terry M. Sanks, Esq.
Lead Counsel
Florida Bar No. 154430
Liandra Izquierdo, Esq.
Florida Bar No. 1033468

JS 44   (Rev. 03/99)   **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

JOEL P. PRICE d/b/a JOEL PATRICK, an individual,

**DEFENDANTS**

THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON ⊞

**(b)** County of Residence of First Listed Plaintiff   Pasco County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Terry M. Sanks, Esq, Liandra Izquierdo, Esq., BEUSSE SANKS, PLLC
612 E. Colonial Drive, Suite 250 ⊞

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*     Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☒ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | **IMMIGRATION** | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | Actions | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Lanham Act, 15 U.S.C. §§ 1114, 1116, and 1125(a), and the All Writs Act, 28 U.S.C. § 1651(a).

Brief description of cause:
This is an action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law ⊞

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.   DEMAND $   CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
12.12.2025

SIGNATURE OF ATTORNEY OF RECORD
Terry M. Sanks, Esq.

**FOR OFFICE USE ONLY**

RECEIPT #   _____   AMOUNT   _____   APPLYING IFP   _____   JUDGE   _____   MAG. JUDGE   _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**     **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**     **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**     **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**     **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**     **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: <u>Nature of Suit Code Descriptions.</u>

**V.**     **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title <u>28 U.S.C. Section 1404(a)</u>.  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title <u>28 U.S.C. Section 1407</u>.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**     **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**     **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases.**  This section of the JS 44 is used to reference related cases, if any.  If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

# EXHIBIT A

# United States of America

## United States Patent and Trademark Office

# WHITE PRIVILEGE CARD

**Reg. No. 7,055,199**

**Registered May 16, 2023**

**Int. Cl.: 20**

**Trademark**

**Principal Register**

Joels Pro, LLC  (OHIO LIMITED LIABILITY COMPANY)
4220 Pennywood Drive
Beavercreek, OHIO 45430

CLASS 20: Plastic printed novelty identification cards for entertainment purposes, not encoded and not magnetic

FIRST USE 12-19-2018; IN COMMERCE 12-19-2018

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "CARD"

SER. NO. 97-445,892, FILED 06-07-2022



*Katherine Kelly Vidal*

Director of the United States
Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO).  The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO.  To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**ASSIGNMENT**
*NUNC PRO TUNC* **TRADEMARK**

WHEREAS, JOELPATRICK, LLC, a Florida Limited Liability Company, with an address at 16573 Hutchison Road, Odessa, Florida, 33556 ("**Assignor**"), is the owner of the entire right, title and interest in and to the following registered trademark (the "**Mark**"):

| Trademark | Registration No. | Registered |
|---|---|---|
| WHITE PRIVILEGE CARD | 7,055,199 | May 16, 2023 |

WHEREAS, Assignor is desirous of assigning the Mark to JOEL P. PRICE D/B/A JOEL PATRICK (who is also Member/Manager of Assignor), an individual, residing in Florida ("**Assignee**"), and Assignee is desirous of acquiring all rights in and to the Mark, including any and all common law rights in and to the Mark.

NOW THEREFORE, for good and valuable consideration, the receipt of which is hereby acknowledged, Assignor hereby sells, assigns and transfers absolutely unto Assignee *nunc pro tunc* as of December 31, 2024, by Manager approval, the entire right, title and interest in and to the Mark, therefore and thereupon, the right to sue and recover for past, present and future infringement regarding the Mark, all goodwill and the business of Assignor to which the Mark pertains, all claims for damages by reason of past infringement of the Mark and the right to sue and collect damages for such infringement, to be held and enjoyed by the Assignee for its own use and benefit, and for its successors and assigns as the same would have been held by Assignor had this Assignment not been made.

**(NOTARIZED SIGNATURE ON NEXT PAGE)**

ACCEPTED AND AGREED:

JOELPATRICK, LLC (ASSIGNOR)

By 

Joel P. Price, Manager
JOELPATRICK, LLC

STATE OF FLORIDA
COUNTY OF _Hillsborough_

The foregoing instrument was acknowledged before me this _7th_ day of December 2025,
by Joel P. Price on behalf of JOELPATRICK, LLC.

(Seal)

Personally known: _____
OR Produced Identification: _Florida Drivers License_
Type of Identification Produced: _Florida Drivers License_



Notary Public State of Florida
Matthew Conley
My Commission HH 627377
Expires 1/9/2029

## TRADEMARK ASSIGNMENT DRAFT COVER SHEET

Electronic Version v1.1

Assignment ID: 1462329

Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | Nunc Pro Tunc Assignment |
| EFFECTIVE DATE: | 12/07/2025 |

**CONVEYING PARTY DATA**

| Name | Formerly | Execution Date | Entity Type |
|---|---|---|---|
| JOEL PATRICK LLC | | 12/07/2025 | Limited Liability Company : FLORIDA |

**RECEIVING PARTY DATA**

| | |
|---|---|
| **Name:** | JOEL P. PRICE D/B/A JOEL PATRICK |
| **Street Address:** | 7510 N. Mobley Road, |
| **City:** | Odessa |
| **State/Country:** | FLORIDA , UNITED STATES |
| **Postal Code:** | 33556 |
| **Email:** | joelpatrick95 @gmail .com |
| **Entity Type:** | INDIVIDUAL : UNITED STATES |

**PROPERTIES NUMBERS Total: 1**

| Property Type | Number | Word Mark |
|---|---|---|
| **Registration Number:** | 7055199 | WHITE PRIVILEGE CARD |

**CORRESPONDENCE DATA**

**Fax Number:** 4076453200

**Phone Number:** 4076448888

**Email:** trademarks @firstiniplaw .com

*Correspondence will be sent to the email address first ; if that is unsuccessful , it will be sent using a fax number, if provided ; if that is unsuccessful , it will be sent via US Mail .*

**Correspondent Name:** Terry M. Sanks PLLC

**Address Line 1:** 612 E. Colonial Drive

**Address Line 2:** Suite 250

**City** Orlando

**State** FLORIDA

**Country/Postal:** UNITED STATES , 32803

**Docket number:** 20049 -001

**Total Attachments : 1**

source =ptoasgmt_12 -08 -2025 .pdf

**RECEIPT INFORMATION**

**Assignment ID:**        1462329

**Fee Amount:**        $40.00

# EXHIBIT B

**(Public Placeholder – Confidential Document Filed Under Seal)**

# SCHEDULE A

**(Public Placeholder - Confidential Document Filed Under Seal)**